RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

>*Plaintiff-Appellee,*

v.

No. 08-1697

DANIEL FRANCIS GRAMS,

>*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00038-001—Robert Holmes Bell, District Judge.

Argued: April 21, 2009

Decided and Filed: May 29, 2009

Before: CLAY and McKEAGUE, Circuit Judges; HOLSCHUH, Senior District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Richard D. Stroba, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Matthew G. Borgula, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** David L. Kaczor, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Raymond E. Beckering III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

PER CURIAM. Daniel Francis Grams pleaded guilty to robbing a credit union in Grand Rapids, Michigan, in violation of 18 U.S.C. § 2113(a). The district court

_____

[*] The Honorable John D. Holschuh, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

sentenced Grams to a term of imprisonment of seventy-two months.  On appeal, he contends that the district court abused its discretion in sentencing him.   We agree—because the district court failed to explain adequately its reason for imposing the sentence, we vacate Grams's sentence and remand for resentencing.

**I**

Using the 2008 version of the Guidelines manual, the probation office calculated a total offense level of nineteen and a criminal history category of IV.  This resulted in an advisory Guidelines range of forty-six to fifty-seven months of imprisonment for Grams. PSR at 15.  As the probation officer noted, however, several of Grams's convictions from the 1970s through the 1990s were not included in the criminal history calculation because they were beyond the time period for consideration. *Id.* at 16.  In particular, Grams had at least five convictions on record, beginning at age nineteen years, which were not considered.  These convictions included possession of a controlled substance, burglary, and retail fraud. *Id.* at 7-9.  The probation officer suggested that upward departures under U.S.S.G. § 4A1.3 (Departures Based on Inadequacy of Criminal History Category) and § 5K2.21 (Dismissed and Uncharged Conduct) might be warranted. *Id.* at 16.  The probation officer also suggested that an upward variance of two levels would be appropriate under 18 U.S.C. § 3553(a). *Id.* at 16-17.  The probation officer recommended a sentence of seventy-one months, the top of the range resulting from either a two-level increase in the offense level or an increase to the next criminal history category. Sent. Rec. at 1.

The district court notified the parties in writing prior to the sentencing hearing that it was considering an upward departure "to more accurately reflect the Criminal History Level of the Defendant." ROA I at 16.  (The district court later referred to this as its "notice of intent to potentially depart upward under the sentence guideline.")

During the sentencing hearing, the district court explained that it had to consider both the Guidelines range and other sentencing factors to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2). Sent. Tr. at 15.  The district court did not, however, specifically adopt or reject the

Guidelines range recommended in the PSR.  It did note the defendant's extensive problems with alcohol over the years.  The district court then explained,

> This Court believes that an upward departure is necessary for the following reasons.  The age of Mr. Grams, while being only 53 years of age, would give one reason to believe that an individual who started out life, as the government indicates, as a young gentleman being arrested for various criminal activities should have long since outgrown that kind of behavior and should have acquired a respect for law.
>
> To say that he was desperate for money and alcohol and that's why he walked into the particular establishment that he walked into at West Michigan Credit Union on this particular date is in fact evidence of the fact that there is a desperation for money and seemingly no way out of a financial mess but that which can be acquired by force and violence getting the monies, $3,800 from tellers in a bank.  That's a serious, serious offense.  That shows an absolute disregard for laws and conventionality and respect for other persons, let alone respect of institutions, and therefore, it is a serious offense.
>
> This Court believes that an upward departure of two points with a criminal history level of IV is modestly appropriate in this matter to tie the criminality together as being, if not financially and alcohol and/or drug-related, certainly out of sync with the normal learning process of an adult this age.  There is a sense in which most persons who find themselves in court outgrow illegal behavior.  Something in their frame tells them that at the age of 35 or 40 or whatever it is, it's time to become a conventional member of society.
>
> For Mr. Grams this seems to be missing, and I don't know what the component is, whether it's alcohol, drugs, or whether it's a mental problem.  I don't know what it is.  But I do know that the public needs protection and there needs to be an adequate deterrence and that there needs to be certain medical and correctional treatment provided in this matter in order to in some way obviate the likelihood of recidivism and the likelihood that this alcohol will be out of control.
>
> So the Court believes that a sentence that takes into account all these factors of 72 months in the custody of the Federal Bureau of Prisons will be sufficient to address these characteristics and be a just punishment for this offense.

*Id.* at 16-18.

Near the end of the hearing, the government pointed out to the district court that with a two-level upward departure, the resulting range was fifty-seven to seventy-one

months, not seventy-two months. *Id.* at 19. The district court responded that it was "well aware of that mathematical issue, and one month is negligible in my opinion." *Id.* at 20.

The district court subsequently issued a written statement of reasons for the sentence. The district court stated that it adopted the PSR without change. JC at 7. Rather than check the box for an upward departure under § 4A1.3, *see id.* at 8, the district court indicated that it had made an upward variance above the Guidelines range "[d]ue to the defendant's absolute disregard of the law and of other persons, and because of his continual criminal behavior and the likelihood of recidivism, and based upon the provisions of 18 U.S.S.C. § 3553," *id.* at 9.

## II

On appellate review of a defendant's sentence, we look to determine whether the defendant received a reasonable sentence. We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, — U.S. —, 128 S. Ct. 586, 597 (2007). If procedurally sound, we then review the sentence for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 598.

We begin and end our analysis with the procedural reasonableness of Grams's sentence. We first note that the district court did not acknowledge during the hearing what it considered to be the applicable Guidelines range or whether it adopted all of the factual findings set forth in the PSR; the district court only did so in its subsequent written order. This court recently found in *United States v. Blackie* that a similar omission by the district court was one of a number of problems that together constituted plain error.[1] 548 F.3d 395, 401-02 (6th Cir. 2008). A district court is required to "state

---

[1]In this case, however, we are not limited to reviewing any procedural problems only for plain error. It is true that Grams's counsel did not object to the district court's failure to explain adequately its 72-month sentence; instead, when asked after sentencing was complete whether he had any further

in open court the reasons for its imposition of the particular sentence, and, if the sentence" lies outside the applicable Guidelines range, "the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2). While there seems to have been no disagreement among the parties as to the correctness of the PSR's suggested Guidelines range and findings of fact, the district court should still have stated in open court whether it adopted in part or full the sentencing range and factual findings suggested by the probation office. This is especially the case when, as here, the district court sentences a defendant outside of the suggested range and provides further detail only in a statement of reasons sealed from public disclosure. *See Blackie*, 548 F.3d at 401-03 (explaining that the district court's failure to calculate the applicable Guidelines range in open court as well as its lack of specificity in its subsequent written order prohibited any meaningful appellate review); *United States v. Molina*, 356 F.3d 269, 277 (2d Cir. 2004) (noting that one of the purposes of § 3553(c) is "to enable the public to learn why [a] defendant received a particular sentence"). While the Guidelines range that the district court used during the hearing can be inferred from what it stated on the record as well as what it wrote in its subsequent statement of reasons, greater clarity in open court would have aided our appellate review. *Cf. United States v. Lanesky*, 494 F.3d 558, 560-61 (6th Cir. 2007) ("In the present case, the district court did not rule on the disputes at sentencing, but adopted the PSR in its sentencing order. This was not sufficient.").

The district court did not clearly identify during the sentencing hearing whether it was granting an upward departure under the Guidelines or an upward variance under one or more of the non-Guidelines sentencing factors of § 3553(a). "'Departure' is a

---

objections, defense counsel stated that he had none, "other than what I've already raised." Sent. Tr. at 15. Normally, a defendant must object to a district court's procedural errors in imposing sentence immediately after the court imposes the sentence, or any challenges to the procedural aspects of the sentence on appeal are reviewed for plain error. *United States v. Vonner*, 516 F.3d 382, 390 (6th Cir. 2008). However, the *Vonner* rule does not apply to this case because the government brought the procedural error at issue to the district court's attention after it imposed sentence. As this court has recognized, the purpose of the rule applied in *Vonner* is to "provide[] the district court with an opportunity to address the error in the first instance and allow[] this court to engage in more meaningful review." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004). Because these considerations were satisfied here, *Vonner* is inapposite.

term of art under the Guidelines and is distinct from 'variance.'" *Blackie*, 548 F.3d at 403 (quoting *Irizarry v. United States*, 128 S. Ct. 2198, 2202 (2008)).  A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. U.S.S.G. § 1B1.1(E).  Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. *United States v. Smith*, 474 F.3d 888, 896 n.3 (6th Cir. 2007) (Gibbons, J., concurring).  A "variance" refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). *Id.*  While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

The district court provided written notice to the parties that it was considering an upward departure under § 4A1.3 (it did not mention § 5K2.21).  During the sentencing hearing, defense counsel spent considerable time arguing against an upward departure based on his client's past criminal conduct.  The government also addressed the merits of a § 4A1.3 departure, but went on to argue that a weighing of the § 3553(a) factors would also warrant a sentence outside of the Guidelines range.

After listening to counsels' arguments, the district court imposed what it twice called an "upward departure."  In doing so, the district court focused on Grams's long criminal history and his inability to learn from his past mistakes.  Given the probation officer's suggestion that an upward departure under § 4A1.3 might be warranted and the district court's subsequent written notice to the parties, it is plausible that the district court intended to depart upward under that provision.  Starting from the probation office's suggested Guidelines calculations, the range resulting from application of § 4A1.3—fifty-seven to seventy-one months—is identical to the one mentioned by the government at the end of the hearing, to which the district court did not state any disagreement.

However, rather than strict adherence to the mechanics of § 4A1.3, which would have resulted in the same base offense level of nineteen but a higher criminal category of V, the district court stated that it was making an "upward departure of two points with a criminal history level of IV." Sent. Tr. at 17. Increasing the suggested Guidelines range of nineteen by two levels, while keeping the criminal history category at IV, was more consistent with the PSR's suggestion for an upward variance of two levels than an upward departure under § 4A1.3. This also would have resulted in a sentencing range of fifty-seven to seventy-one months. Based on the record before us, we cannot determine from what was stated in open court whether the district court intended to grant a Guidelines departure or a variance. *See United States v. Stephens*, 549 F.3d 459, 466-67 (6th Cir. 2008) (explaining that the district court's use of the term "departure" throughout the sentencing hearing left the appellate court "in doubt as to whether the [district] court fully considered its discretion to *vary* from the sentencing Guidelines range").

This confusion about whether the district court departed or varied might have been harmless had the district court sentenced Grams within the adjusted range. *See United States v. Obi*, 542 F.3d 148, 156 (6th Cir. 2008) ("Where a district court makes a mistake calculating a guideline range for purposes of determining a sentence under section 3553(a), we are required to remand for resentencing unless we are certain that any such error was harmless—i.e. any such error did not affect the district court's selection of the sentence imposed."). However, the district court went beyond that range and sentenced the defendant to seventy-two months. This was in some tension with its earlier statement that it would impose an "upward departure of two points" (i.e., two levels to the offense level) because, as explained above, the resulting range was fifty-seven to seventy-*one* months, not seventy-*two* months. When alerted by the government that the imposed sentence was beyond the revised range, the district court responded that the one-month difference was, in its opinion, negligible. Yet, as the Supreme Court explained in *Glover v. United States*, "any amount of jail time" has constitutional "significance." 531 U.S. 198, 203 (2001). Although there may be "some degree of subjectivity" in selecting a sentence of X months versus one of X-1 or X+1 months,

*United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006), a district court's view that a particular amount of time in prison is negligible or otherwise insignificant is not a valid reason for exceeding the range.

In its subsequent written statement, the district court did not note that it had made a two-level increase in the offense level, nor did it note that doing so resulted in a sentencing range of fifty-seven to seventy-one months. Rather, the district court simply stated that it had imposed a sentence of seventy-two months based on a weighing of several § 3553(a) factors. The district court did not provide any specific reason for sentencing Grams above the revised sentencing range beyond its statement during the hearing that one month was negligible. This was not a sufficient explanation of the sentence imposed. *See United States v. Cousins*, 469 F.3d 572, 578 (6th Cir. 2006) (finding that the district court failed to provide an adequate explanation for the defendant's sentence because, among other deficiencies, "the district judge failed to provide his reasoning for the variance or to explain how the two months that he added to the maximum Guidelines sentence were related to his stated goal of protecting the public, which might as easily be invoked to justify a variance of one day or ten years"), *overruled in part on other grounds by Irizarry*, 128 S. Ct. 2198.

### III

Given the district court's statement about the additional month of imprisonment, along with the district court's failure to state in open court whether it accepted or rejected the proposed Guidelines range and our inability to discern how the district court enhanced that range, we are unable to perform any meaningful appellate review of Grams's sentence. Accordingly, we **VACATE** Grams's sentence and **REMAND** for further proceedings consistent with this opinion.